956 So.2d 562 (2007)
STATE of Louisiana
v.
George KING.
No. 2006-KK-2383.
Supreme Court of Louisiana.
April 27, 2007.
Charles C. Foti, Jr., Attorney General, J. Reed Walters, District Attorney, James Christopher Peters, Assistant District Attorney, for Applicant.
Law Office of J. Michael Small, J. Michael Small, Katherine Sara Williamson, for Respondent.
KIMBALL, Justice.
The sole issue presented by this case is whether defendant has shown by a preponderance of the evidence that the district attorney has a personal interest in the cause which is in conflict with the fair and impartial administration of justice such that he should be recused pursuant to La.C.Cr.P. art. 680(1). Because we find that the district attorney's personal animosity toward defendant stemming from the district attorney's belief that defendant started or spread a salacious rumor about him and a member of his family was a factor in making certain prosecutorial decisions, we believe his ability to fairly and impartially conduct defendant's trial was called into question. Consequently, we find the district attorney should be recused in accordance with La.C.Cr.P. art. 680(1).

Facts and Procedural History
On October 21, 2003, a LaSalle Parish Grand Jury returned a true bill of *563 indictment charging defendant, George King, the Chief of Police for the town of Jena, Louisiana, with malfeasance in office in violation of La. R.S. 14:134(1).[1] The charges stem from an incident that occurred on October 6, 2003, in which James Robbins, the Mayor of Jena, struck Gary Compton, a member of the Town Council of Jena, twice in the face with a closed fist after a heated verbal exchange. When the incident occurred, the mayor was accompanied by defendant, who allegedly witnessed and participated in the event, yet failed to take any action to prevent its escalation into a simple battery, and failed to make an arrest pursuant to an investigation.
Defendant filed various pre-trial motions that are not relevant here. Eventually, trial was set for August 29, 2005. On August 23, 2005, defendant filed a motion to recuse the district attorney alleging the prosecutor possessed strong personal feelings of animosity towards him that would conflict with the fair and impartial administration of justice. Specifically, defendant alleged the district attorney believed that defendant had either started or spread salacious rumors concerning the personal lives of the district attorney and a member of his family. Defendant further alleged the district attorney's belief that he had started or spread the rumors had driven the district attorney to proceed with his prosecution instead of perhaps dismissing it as was earlier discussed by defendant's attorney and the district attorney.
On July 11, 2006, a contradictory hearing was conducted on defendant's motion to recuse the district attorney. The trial court denied the motion. On defendant's application, the court of appeal granted a writ and made it peremptory, finding the trial court erred in denying the motion to recuse the district attorney. State v. King, 06-0981 (La.App. 3 Cir. 8/29/06). This court granted certiorari upon the State's request. State v. King, 06-2383 (La.12/15/06), 944 So.2d 1268.

Discussion
Generally, the district attorney has charge of every criminal prosecution by the state in his district. La. Const. art. V, § 26. See also La.C.Cr.P. art. 61. The district attorney determines whom, when, and how he shall prosecute. La.C.Cr.P. art. 61. Nonetheless, it has long been the rule in Louisiana that the district attorney, as a quasi-judicial officer, must be fair and impartial, and animated by a sense of public duty rather than stimulated by a hope of private gain. State v. Tate, 185 La. 1006, 1019, 171 So. 108 (1936). Thus, La. C.Cr.P. art. 680(1) provides:
A district attorney shall be recused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice[.]
In Plaquemines Parish Com'n Council v. Perez, 379 So.2d 1373 (La.1980), this court held that La.C.Cr.P. art. 680 is not an unconstitutional restriction of the plenary powers granted to district attorneys by La. Const. art. V, § 26 because the recusation provision found in Article 680 is required by the constitutional guarantee of the fair and impartial administration of justice. In reaching this conclusion, the *564 court cited La. Const. art. I, § 2, which provides, "No person shall be deprived of life, liberty, or property, except by due process of law." Id., 379 So.2d at 1377. Additionally, the court cited La. Const. art. I, § 22, which provides, "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." Id., 379 So.2d at 1377-78.
The legislature first provided for the recusation of district attorneys in 1877. Id., 379 So.2d at 1376. At that time, the grounds provided for recusation of a district attorney were specified relationships to an accused or injured party, and prior employment or consultation of the district attorney by the accused party. Id. An additional ground for recusation was added in art. 310 of the 1928 Code of Criminal Procedure such that recusal was required if the district attorney had "a personal interest adverse to the prosecution." Id.
In Tate, the court ordered recusation under La.C.Cr.P. art. 310 (1928) of a district attorney who was employed as an attorney in several civil suits against the defendant, stating that a district attorney "should not be involved or interested in any extrinsic matters which might, consciously or unconsciously, impair or destroy his power to conduct the accused's trial fairly and impartially." Tate, 185 La. at 1020, 171 So. at 112. Subsequently, in State v. Marcotte, 229 La. 539, 86 So.2d 186 (1956), the court followed Tate when it declared improper the trial court's refusal to hear evidence on a motion to recuse a district attorney for allegedly having a personal interest adverse to that of the prosecution. However, two Justices expressed their disagreement with the Tate decision. Subsequently, the grounds of recusation of a district attorney were placed in La.C.Cr.P. art. 680 and generally followed La.C.Cr.P. art. 310 (1928) and Louisiana jurisprudence. See La.C.Cr.P. art. 680, Comment (b). The former ground of "personal interest adverse to that of the prosecution" was changed to the current language of "personal interest in the cause which is in conflict with fair and impartial administration of justice" to codify the Tate decision and to address its criticism by two of the Marcotte Justices. See id. See also Perez, 379 So.2d at 1377; Charles J. Yeager & Lee Hargrave, The Power of the Attorney General to Supercede a District Attorney: Substance, Procedure & Ethics, 51 La. L.Rev. 733, 746 (1991) ("The ethical ideal of Tate and its codification, article 680, is that of the district attorney as an excellent instrument of the law, who actualizes the law objectively in his professional choices and judgments, but without the influence of personal or self interest in those judgments.").
This amended language was at issue in Perez. That case involved an alleged theft of public funds by an employee of the Plaquemines Parish Commission Council that was accomplished by the use of forged checks drawn against the Council's account with the Delta Bank and Trust Company. A special grand jury was convened by the district attorney to investigate the allegations. Plaintiffs, the Council and its president, brought suit to compel the recusation of the district attorney and to enjoin him from taking any action with respect to the investigation of the theft and of the Council. The Council president was the brother of the district attorney. The petition for recusation alleged the district attorney had a disqualifying personal interest in the cause because he was the chairman of the board of directors of the Delta Bank and a major stockholder. The petition also alleged the district attorney was employing the current investigation as a means of *565 gratifying his personal animosity against his brother. In response to the suit, the district attorney filed several exceptions, including an exception of no cause of action.
The court noted it was faced with the difficult issue of whether La.C.Cr.P. art. 680 may be interpreted to apply to an investigation as well as to a prosecution. In analyzing this issue, the court stated:
If plaintiff is charged with a crime, kinship alone will require the recusal of the district attorney, as defendant readily admits. C.Cr.P. 680. Plaintiff has not been charged, arrested, subpoenaed or questioned. Article 680 refers to the matters from which the district attorney may be recused as: the "cause" (C.Cr.P. 680(1)), the "case" (C.Cr.P.680(3)); or a matter in which there is an "accused" (C.Cr.P.680(2)). Here there is no "accused" and no "case". If there is a "cause," it is the investigation described by plaintiff. Plaintiff, however, describes no particular offense for which he fears a bad faith prosecution. What he seeks protection from is an investigation to discover some offense for which the plaintiff might be prosecuted.
Perez, 379 So.2d at 1380. While the court found the theft was both a "case" and a "cause" since it consisted of identifiable criminal conduct that had resulted in an accusation of a crime, it found the district attorney's brother, unlike, perhaps, the employee accused of theft, had no cause of action for recusal of the district attorney.
Approximately six months following the Perez decision, the Louisiana Legislature amended La.C.Cr.P. art. 680 to include a district attorney's recusation from grand jury proceedings. La. Act No. 195 of 1980. Thus, article 680(1) now provides for the mandatory recusal of a district attorney when he "[h]as a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice." The 1980 amendment, following this court's somewhat narrow interpretation of the article in Perez, evidences a legislative intent to broaden even further the circumstances requiring a district attorney's recusal.[2]
The remedy of recusation pursuant to La.C.Cr.P. art. 680 "was developed in order to provide a form of protection against bias and partiality to one prosecuted for commission of a criminal offense." Perez, 379 So.2d at 1378. In a motion to recuse the district attorney pursuant to La.C.Cr.P. art. 680, the defendant bears the burden of showing by a preponderance of the evidence that the district attorney has a personal interest in the cause or grand jury proceeding which is in conflict with the fair and impartial administration of justice. State v. Bourque, 622 So.2d 198, 216-17 (La.1993); State v. Edwards, 420 So.2d 663, 673 (La.1982). In the instant case, the sole issue presented is whether defendant has shown by a preponderance of the evidence that the district attorney has a personal interest in the cause which is in conflict with the fair and impartial administration of justice such that he should be recused.
To resolve this issue, we find the history of the recusation article, and this court's prior jurisprudence interpreting La. C.Cr.P. art. 680(1) and its predecessor instructive. As briefly mentioned above, the Tate case involved a motion to recuse the district attorney in which defendant alleged *566 the district attorney had a personal interest adverse to that of the prosecution because he was counsel in a series of civil suits against the defendant and the outcome of the civil suits depended upon his success in convicting the defendant. In finding the district attorney should have been recused, this court stated:
The district attorney is a quasi judicial officer. He represents the State, and the State demands no victims. It seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers as it is to see that no guilty man escapes. Therefore he should not be involved or interested in any extrinsic matters which might, consciously or unconsciously, impair or destroy his power to conduct the accused's trial fairly and impartially.
* * *
And so, in this case, while we are satisfied of the good faith of the district attorney in opposing the demand of defendant for his recusation and of the sincerity of his belief that he has impartially discharged the duties of his office, we think that the policy of the law would be best subserved by his recusation.
Tate, 185 La. at 1019-21, 171 So. at 112-13 (internal citations omitted).
In State v. Cox, 246 La. 748, 167 So.2d 352 (1964), defendant was charged with defamation of a judge and of the district attorney. Both offenses occurred on the same date and in the same incident. The district attorney properly recused himself in the case in which he was the victim. However, he did not recuse himself and his staff in the case of defamation against the judge until after he or a member of his staff had argued several motions in the case. This court held that the trial court's failure to timely recuse the district attorney violated defendant's constitutional and statutory rights and stated:
The district attorney was here confronted with an accused who had allegedly made statements which defamed his character; he was the injured party. A sincere and conscientious public official like District Attorney Pitcher would naturally be outraged by the alleged defamatory statements, as would any person having his good reputation. He would naturally feel that a conviction of the accused would be a public vindication of the wrong done him, and he would have a great personal interest in seeing that the accused was convicted. . . .
Id., 246 La. at 761-62, 167 So.2d at 357.
State v. Snyder, 256 La. 601, 237 So.2d 392 (1970), involved a heated political campaign in which the district attorney supported defendant's opponent and announced during the campaign his intention to prosecute defendant for defamation for campaign-related remarks. Following the election, the grand jury indicted defendant for 14 separate counts of defamation, including allegations that he defamed the district attorney, a charge which was subsequently nol-prossed. Defendant sought to recuse the district attorney in his prosecution for perjury pursuant to La.C.Cr.P. art. 680(1). The district attorney admitted defendant's derogatory statements during the campaign against him and others caused him to develop a strong personal animosity toward defendant, but testified that this personal animosity eroded after the election and was gone when the prosecution was instituted. Despite the district attorney's assurances that he no longer felt hostility towards defendant, this court determined the motion to recuse should have been granted, stating:
[W]hile we do not doubt that [the district attorney] is sincere in his belief *567 that he has banished the personal animosity he harbored toward relator during the campaign, we do not believe that, under the circumstances presented, it would serve the public interest for him to remain in the case as prosecutor. For, after all, while he may believe that his personal animosity has subsided or eroded, still, where such deep-seated hatred has once evinced itself, the district attorney might, even though unconsciously, have impaired his power to conduct relator's trial fairly and impartially. We therefore hold that the district attorney should be recused in the case.
Id., 256 La. at 609-10, 237 So.2d at 395.
Since at least 1936, this court has interpreted La.C.Cr.P. art. 680(1) and its predecessor to embody a policy requiring a district attorney's recusal when the situation presented raises questions as to whether the district attorney's ability to fairly and impartially perform his duties has been impaired, even unconsciously and despite his earnest assertions to the contrary. Thus, La.C.Cr.P. art. 680(1) does not envision a subjective determination as to whether the district attorney would, in fact, be unfair. Rather, it employs an objective decision as to whether a reasonable person would believe the facts at issue regarding the district attorney's personal interest in the cause would impair his ability to act fairly and impartially in conducting defendant's prosecution.
Additionally, the legislative history of the article and this court's jurisprudence interpreting La.C.Cr.P. art. 680(1) and its predecessor evince a wide application of the recusation article. When Justices questioned the Tate court's broad interpretation of the phrase "personal interest adverse to the prosecution," the legislature responded by amending that phrase to read "personal interest in the cause which is in conflict with fair and impartial administration of justice" to clarify the article and preserve the Tate interpretation. When this court stated "cause" includes identifiable criminal conduct that results in an accusation of a crime, but does not extend to an investigation for a non-particularized offense, the legislature extended the article to apply to grand jury proceedings. This amendment further broadened the scope of the article.
The record in this case reveals that defense counsel filed the motion to recuse after a telephone conversation with the district attorney during which the district attorney informed defense counsel of his intention to make essentially the same plea proposal to defendant as he had to the mayor. The mayor's plea proposal consisted of guilty pleas to certain misdemeanor offenses and required the mayor to resign from office. In a letter to the district attorney following that conversation, defense counsel described the district attorney's position as "a 180 degree turnabout from your earlier statement clearly indicating an uncertainty as to whether you should proceed at all with the prosecution of [defendant]." The letter further recounted that when defense counsel inquired about the district attorney's "change of heart" during the telephone conversation, the district attorney informed him that defendant now found himself "in the cross hairs" as a result of two rumors defendant had either started or spread about the district attorney and one of his family members.
The letter further related in a second telephone conversation with the district attorney later that day in which defense counsel suggested that the district attorney's attitude concerning the prosecution of and appropriate punishment for defendant had "been drastically affected by the rumors" that the district attorney associated with his client. The letter recited that *568 the district attorney then indicated that the rumors were not the "only thing" that had changed his mind about the prosecution of defendant, but that he had also been influenced to proceed with the prosecution of defendant based on his opinion that defendant had committed perjury in an unrelated case when he contradicted information provided in an affidavit in which he acted as the affiant.
At the hearing on the motion to recuse, the district attorney admitted to an earlier conversation with defense counsel in which he indicated the case against the mayor was of a higher priority than that against defendant. The district attorney did not deny that he initially told defense counsel he was not even certain that he intended to proceed against defendant at all.
Regarding the telephone conversation referenced in defense counsel's letter, the district attorney acknowledged that he stated he would be amenable to making the same plea offer that he had made to the mayor. The district attorney similarly acknowledged that he told defense counsel he was definitely going to proceed with the felony prosecution of defendant if the mayor's case resolved unless defendant pleaded guilty to misdemeanor offenses and resigned from office. The district attorney admitted telling defense counsel that his client was in the cross hairs as a result of the rumors. The district attorney attributed his change of heart to the salacious rumors and to the fact that, at that time, it appeared the mayor's case would resolve. Nonetheless, the district attorney explained that he declined to recuse himself because:
the rumors did not change my approach to the case. The rumors did not and could not change the facts of the case. What I was trying to tell you, I think, was that even though I may have been agitated about it, and yes, I was agitated, that wasn't gonna change my approach to the facts of the case because I couldn't change the facts of the case. I think that's what I was trying to tell you.
However, the district attorney did admit that the rumors factored into his decision to proceed with the prosecution against defendant.
When examined by the State, the district attorney testified that no new evidence in the case had been developed following defendant's indictment by the grand jury. He agreed that he initially considered the charges against defendant "not a high priority case" and questioned whether he would "get to" defendant, but stated he never indicated that he would never prosecute the matter. The district attorney testified that he never offered to dismiss the case nor did he tender a more favorable plea offer to defendant before learning of his alleged role in the rumors circulating in the community about him and his family member. The district attorney stated that nothing had taken place that would prevent him from conducting himself in a fair and impartial manner concerning defendant's case. On redirect, the district attorney again did not deny that the rumors he attributed to defendant played into his decision to proceed with the felony prosecution. The district attorney explained that upon reaching a tentative plea agreement with the mayor, "I was not gonna treat [defendant] any differently than I treated [the mayor]."
Defense counsel also testified at the hearing. Regarding the telephone call in which the rumors were first discussed, defense counsel stated:
[The district attorney] very forcefully told me that there was a good chance the Mayor's case would work out and that if it did  and I said, well, if that happens, what's gonna happen to  what *569 about our case? That's the question that I hoped to hear a favorable response to. Not only did I not hear a favorable response, I heard a very angry response from [the district attorney] who initially declined to tell me why there had been such a change of heart. I reminded [the district attorney] during the first conversation of the various conversations we had had wherein he indicated a doubt as to whether he intended to proceed at all. And to his credit, he didn't deny it. I asked him: Well, what changed? What has happened? I had had contact with my client, as I testified under oath. Nothing that I had been told would account for any  this new  what I perceived to be new animosity on the part of [the district attorney]. Finally, [the district attorney] went into the rumors that he attributed to my client. . . . They were very serious allegations or rumors. And they are the sort which would cause strong feelings.
As stated earlier, the trial court denied defendant's motion to recuse the district attorney following the hearing. The court of appeal peremptorily reversed the decision of the trial court and granted the motion to recuse.
At the hearing, the district attorney clearly and unequivocally stated his belief that defendant was responsible for spreading or starting the offensive rumors was a factor in his decision to proceed with the prosecution against defendant. While he articulated additional factors that influenced his decision, the fact remains that his admitted irritation at defendant as a result of the promulgation of the rumors played a part in his prosecutorial actions. His reaction to the rumors was to use his position to place the defendant in the "cross hairs" of the State's criminal justice system  a system that seeks equal and impartial justice only. See Tate, 185 La. at 1019, 171 So. at 112. The fact that the district attorney's personal negative feelings against defendant were a factor in making prosecutorial decisions in defendant's case is inconsistent with the policy underlying La.C.Cr.P. art. 680(1) as expressed in Snyder, Cox, and Tate.
In the instant case, we find sufficient proof that the district attorney had a personal interest in the cause that is in conflict with the fair and impartial administration of justice. As discussed in Perez, the cause is the alleged crime of malfeasance in office. According to the district attorney's own testimony, one of the reasons he proceeded with the prosecution of the malfeasance charge was his belief that defendant was involved in spreading or starting offensive rumors. It is conceivable that the district attorney's continued prosecution of the charge against defendant could be seen by the public as a personal desire for retaliation and retribution in the face of the rumors. This personal interest in the cause calls into question the district attorney's ability to conduct defendant's trial fairly and impartially.
The State maintains that the instant situation is easily distinguished from Snyder because the conduct which led to the district attorney's animosity toward defendant occurred following the indictment. The State further alleges that the court of appeal's ruling would lead to "shopping" by defendants because all the defendant would have to do would be to allege that a rumor had been circulating and demand recusation of the district attorney. The State's argument that an event occurring after the institution of prosecution that might affect the district attorney should not give rise to recusal ignores the reality that district attorneys make myriad decisions regarding a case even after the institution of prosecution. See generally In re: Toups, 00-0634, p. 10 (La.11/28/00), 773 *570 So.2d 709, 715 ("In our system of justice, we entrust vast discretion to the prosecutor in deciding which cases to pursue, what crimes to charge, and how to allocate limited resources."). For example, once prosecution is instituted, a district attorney must still decide whether to dismiss the charges, whether to offer a plea bargain, what any plea bargain will entail, and how the trial will be conducted. Recusation pursuant to La.C.Cr.P. art. 680(1) can surely be required when the district attorney's personal interest in the cause which is in conflict with fair and impartial administration of justice arises after the institution of prosecution because prosecutorial decision making does not end with the indictment. Thus, we do not find the recusation principles embraced by Snyder to be distinguishable simply because the district attorney's objectionable personal interest in that case occurred prior to the indictment. Additionally, we do not foresee every defendant wishing to instigate the recusation of the district attorney to successfully do so by alleging, starting or spreading a rumor about the district attorney. It is only when a defendant can demonstrate in his particular case that the negative personal feelings of the district attorney stemming from the allegation or rumor is a factor in the district attorney's prosecutorial decisions that he could perhaps convince a court to order the district attorney's recusal. That is, a defendant would be required to prove by a preponderance of the evidence the applicability of La.C.Cr.P. art. 680(1).
A district attorney should not harbor any personal feelings toward an accused that might, consciously or unconsciously, impair his ability to conduct the accused's trial fairly and impartially. In the instant case, the district attorney candidly and admirably admitted his belief that defendant was responsible for spreading or starting offensive rumors about him and a family member was a factor in his decision to proceed with the prosecution against defendant. Because of this, we find his personal interest in the cause would lead a reasonable person to question whether he could conduct defendant's trial fairly and impartially. While we have no reason to doubt the district attorney's belief that he could conduct defendant's trial fairly and impartially, we find, as we did in Snyder, we cannot say "that, under the circumstances presented, it would serve the public interest for him to remain in the case as prosecutor." Snyder, 256 La. at 609, 237 So.2d at 395. In the instant case, we find defendant has shown by a preponderance of the evidence that the district attorney has a personal interest in the cause which is in conflict with the fair and impartial administration of justice. The district attorney has not brought forth any evidence to negate the conclusion that his admitted personal interest in the cause is in conflict with the fair and impartial administration of justice. Cf. State v. Marcal, 388 So.2d 656 (La.1980) (on reh'g) (noting the record contained no evidence that the district attorney himself initiated or decided to proceed with the prosecution of defendant). We therefore hold the district attorney should be recused in this case. Consequently, we find the trial court erred in denying defendant's motion to recuse the district attorney and the court of appeal correctly reversed that decision.
We recognize this case presents a close issue of whether recusal of the district attorney is warranted. However, we believe that when a colorable application of La.C.Cr.P. art. 680(1) has been shown, we must err on the side of recusal to promote the fair and impartial administration of justice. We hasten to add, however, while it is desirable to err on the side of recusal in close cases, recusal is not required in *571 response to a spurious or vague charge of unfairness and impartiality.

Decree
For all the above reasons, we find defendant has proved by a preponderance of the evidence that the district attorney should be recused pursuant to La.C.Cr.P. art. 680(1). Consequently, we find the trial court erred in denying the motion to recuse the district attorney. Accordingly, we affirm the court of appeal's order granting defendant's motion to recuse the district attorney and remanding the case to the trial court for further proceedings.
AFFIRMED AND REMANDED.
VICTORY, J., dissents and assigns reasons.
TRAYLOR, J., dissents.
KNOLL, J., dissents for the reasons assigned by VICTORY, J.
WEIMER, J., concurs in the result and assigns reasons.
VICTORY, J., dissenting.
I dissent because I do not believe the evidence shows that the district attorney has "a personal interest in the cause . . . which is in conflict with fair and impartial administration of justice," to the extent that recusal is warranted. Long before the district attorney had ever heard any rumors, he had already begun prosecuting George King with malfeasance in office. In my view, deciding to proceed with the prosecution after he heard the rumors does not provide adequate grounds for recusal.
WEIMER, J., concurring.
I respectfully concur in the result. Louisiana Code of Criminal Procedure article 680 states, in pertinent part:
A district attorney shall be recused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice.
Pursuant to this provision, recusal is mandatory when the district attorney has a personal interest in the cause which is in conflict with fair and impartial justice. A personal interest in the cause is insufficient to require recusal unless this personal interest also conflicts with the fair and impartial administration of justice.
A personal interest in the cause could be any factor which results in the district attorney singling out a particular case for any reason unrelated to the duties and responsibilities of a prosecutor. A personal interest in the cause results if the district attorney or a prosecutor is the victim of the crime charged or if there is a direct connection between the crime charged and the district attorney. See, e.g., State v. Tate, 185 La. 1006, 171 So. 108 (1936); State v. Cox, 246 La. 748, 167 So.2d 352 (1964); State v. Snyder, 256 La. 601, 237 So.2d 392 (1970), where there was a direct connection between the charges and the district attorneys. A personal interest in the cause also results when an incident or occurrence adversely affects the district attorney's ability to exercise detached professional judgment.
Here, the district attorney acknowledged that the rumors attributed to the defendant caused him to develop agitation toward the defendant. It was not just the rumors, but the district attorney's candid admission that the rumors impacted and influenced how he exercised his prosecutorial discretion that results in a finding that the district attorney had a personal interest in the cause. The district attorney's reaction to the rumors prevented him from exercising detached professional judgment.
*572 The more difficult question is whether this acknowledged and admitted personal interest in the cause also "conflicts with fair and impartial administration of justice."[1] LSA-C.Cr.P. art. 680(1).
Prior to the rumors, the district attorney volunteered to defense counsel, much to defense counsel's surprise, that he was not certain he intended to proceed with the prosecution of the defendant. However, in part due to the rumors,[2] the district attorney stated that he had a change of priority and that the defendant was now "in the cross hairs."[3] The district attorney admitted that the rumors factored into his decision to proceed with the prosecution. Specifically, the district attorney acknowledged the rumors he attributed to the defendant "played into" his decision to proceed with the felony prosecution[4] and the "rumors were part and parcel" of his decision to "press full board with the felony prosecution." This change in his approach to the prosecution of the case, directly attributable to the rumors, established a conflict with the fair and impartial administration of justice.
A district attorney cannot indulge his personal animosity such that professional judgment is affected. Although LSA-C.Cr.P. article 680(1) must be narrowly construed and narrowly applied, the district attorney's admission that personal animosity toward the defendant caused him to alter his prosecutorial approach triggers the recusal provision.
A district attorney is afforded vast discretion in determining who, when, and how to prosecute. LSA-C.Cr.P. art 61; see also LSA-Const. art. V § 26. See In re Louis Thad Toups, XXXX-XXXX (La.11/28/2000), 773 So.2d 709, 715. A district attorney is granted broad civil immunity. Knapper v. Connick, 96-0434 (La.10/15/96), 681 So.2d 944, 950. Recusal *573 serves as a limitation on the prosecutorial authority of the district attorney. Nevertheless, concepts of comity mandate that the recusal provision be limited in application so that recusal is not used as a tool to thwart a prosecutor. Each case of recusal must be carefully evaluated and decided on its own facts. This matter presents in a unique factual context which justifies recusal.
NOTES
[1] The bill of indictment was later amended to include a violation of La. R.S. 14:134(2) as well as La. R.S. 14:134(1). La. R.S. 14:134(1) and (2) provide:

Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee;
(2) Intentionally perform any such duty in an unlawful manner[.]
[2] In Perez, this court noted that "[i]t would have been simple to limit recusal to pending criminal prosecutions if the legislators had intended. It would likewise have been simple to extend to criminal investigations the right to recuse the district attorney." 379 So.2d at 1381.
[1] The majority suggests that the changes in the recusal statute evidence a legislative expansion of the statute. I disagree in part. The recusal statute initially provided that recusal was required if the district attorney had "a personal interest adverse to the prosecution." That portion of the current version which provides, in part, "a personal interest in the cause" I find to be virtually indistinguishable from the former recusal provision in application. However, the current version goes on to provide "which is in conflict with the fair and impartial administration of justice." This language, which was not part of the former recusal provision, acts as a limiting consideration on the applicability of the current recusal statute. Now, it is not enough that the district attorney have a "personal interest in the cause." It is also necessary that the defendant establish that there is a conflict with a fair and impartial administration of justice. If the district attorney can be fair and impartial despite a personal interest, there is no need to recuse.

I agree with the majority that the statute was broadened after Plaquemines Parish Commission Council v. Perez, 379 So.2d 1373 (La. 1980), but only to expand the proceedings to which the statute was applicable, i.e., to grand jury proceedings.
[2] The American Bar Association's Standards for Criminal Justice Prosecution Function and Defense Function (3rd ed., 1993), Standard 3-3.9(d) provides:

In making the decision to prosecute, the prosecutor should give no weight to the personal or political advantages or disadvantages which might be involved or to a desire to enhance his or her record of convictions.
[3] The district attorney indicated that this meant he was going to try the matter as a priority.
[4] At the hearing on the motion to recuse, the district attorney acknowledged the companion case against the mayor of the town of Jena was his primary concern. The charges against the mayor arose out of the same incident as the charges at issue in this matter. The mayor entered a plea agreement which kept a felony charge off of his record and allowed him to plead to three misdemeanors. He was also required to resign from office.